# Destribats Campbell Staub & Schroth, LLC

247 White Horse Avenue • Hamilton, NJ 08610-2699 • (609) 585-2443 • Fax (609) 585-9508
795 Parkway Avenue, Suite A3 • Ewing, NJ 08618-2704
www.destribatslaw.com • Established 1972

Anthony J. Destribats *
Bernard A. Campbell, Jr.
Raymond C. Staub **
David P. Schroth
Kimberly A. Greenberg

Adam Lipps **

\* Member of NJ & FL Bar
\*\* Member of NJ & PA Bar

Jay G. Destribats 1969-2015
Se Habla Español
Please Respond to the Hamilton Office

April 7, 2022

The Honorable Michael A. Shipp
United States District Court Judge
Clarkson S. Fisher United States Courthouse
402 East State Street
Trenton, NJ 08608

Re: **United States v. Delahanty et. al.**
    Crim No. 21-872

Dear Judge Shipp:

Please accept this letter memorandum in support of Defendant Michael Delahanty's motion to dismiss Count One of the Indictment charging him with a violation of 18 U.S.C. § 242, Deprivation of Rights Under Color of Law.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On or about November 18, 2021 the federal grand jury in and for the district of New Jersey sitting at Trenton returned a two count Indictment alleging in Count One that defendant Michael Delahanty violated the civil rights of TB, a juvenile, referred to by the government as Victim 1, in violation of 18 U.S.C. § 242 and used unreasonable force when on January 5, 2018 Delahanty is alleged to have stepped on the back of the head of TB while at least 3 other Ewing

Township police officers attempted to handcuff and arrest the subject pushing his head into the snow causing bodily injury. (ECF Docket entry 1) By way of factual background Ewing Township has a population of approximately 36,000 people and is situated in Mercer County, New Jersey.

It is further alleged that shortly thereafter, defendant Matthew Przemieniecki kicked powdered snow into the victim's face. It is further alleged that defendant Ubry also kicked powdered snow into the defendant's face. Finally, it is alleged that subsequently defendant Przemieniecki stepped on the back of the victim's head pressing it into the snow.

The United States Government alleges that the above referenced conduct constituted unreasonable and excessive use of force.

18 U.S. Code § 242 - Deprivation of rights under color of law provides in pertinent part:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section…shall be fined under this title or imprisoned not more than ten years, or both….

Victim 1 came into contact with the Ewing police on January 5, 2018, a cold, snowy, winter day, after stealing a car from a woman in Ewing Township and speeding away in the stolen vehicle, achieving speeds approximating 70 mph on Parkway Avenue in Ewing Township. Parkway Avenue is a street mixed with residences, stores and small businesses.

Victim 1 achieved such a great speed that the Ewing Township police had to call off the pursuit for public safety. As Victim 1 sped through the streets of Ewing Township he ultimately

crashed into another motor vehicle at the intersection of Grand Avenue and W. Upper Ferry Road.

Victim 1 abandoned the stolen vehicle and fled on foot. He ran away from the police into a series of houses and ultimately illegally broke into a shed in the backyard of a local resident. He hid there until the Ewing police followed his footprints in the snow to the shed.

Victim 1 then refused to come out of the shed voluntarily and was pulled from the shed through a window by the Township police.

He was immediately taken to the ground. The officers then struggled to handcuff and control Victim 1 for approximately 1 minute before he was handcuffed. He was not subjected to a pat down and frisk until after he was handcuffed.

Prior to handcuffing him, as the defendant resisted arrest and continuously moved it was unknown if the defendant below was armed with a deadly weapon such as a gun or a knife.

Ultimately, Delahanty is seen in the video stepping in the area of the top of Victim's right shoulder area which was heavily padded by his hooded sweatshirt and coat after the alleged misconduct by Officer Delahanty and the others, the defendant below was handcuffed, secured and taken into custody. At no time does Delahanty step on the back of the alleged Victim's head.

Paragraph 4. of the Indictment states: "While Victim 1 was lying face down on the ground, Officers 1,2 and 3 began to handcuff Victim 1. Multiple other ETPD officers, including defendants Delahanty and Przemieniecki, and Ubry, stood nearby and observed the arrest in progress. **Victim 1 did not physically resist ETPD officers at any time.**" (Emphasis added) (ECF 1)

Paragraph 5 the Indictment states "While Officers 1,2 and 3 handcuffed Victim 1 remained lying face down, defendant Delahanty, **unprompted**, stepped on the back of Victim 1's head pressing it into the snow." (Emphasis added) (ECF 1)

## LEGAL ARGUMENT

### POINT I

**DELAHANTY MOVES TO DISMISS COUNT I OF THE INDICTMENT AGAINST HIM ON THE GROUNDS THE INDICTMENT CHARGES HIM WITH ALLEGATIONS THAT ARE OBJECTIVELY PROVABLY FALSE AND THE GOVERNMENT ENGAGED IN MISLEADING CONDUCT BEFORE THE GRAND JURY AND IMPROPERLY INFLUENCED THE GRAND JURY CONTRARY TO LAW**

**ALTERNATIVELY, DELAHANTY MOVES FOR THE IMMEDIATE PRODUCTION OF ALL GRAND JURY MATERIALS INCLUDING TESTIMONY, EXHIBITS AND INSTRUCTIONS OF LAW PRESENTED TO THE GRAND JURY AND ANY GRAND JURY COLLOQUY WITH THE ASSISTANT UNITED STATES ATTORNEY**

The facts at issue are simple. As noted in the statement of facts, paragraph 4. of the Indictment states: "While Victim 1 was lying face down on the ground, Officers 1,2 and 3 began to handcuff Victim 1. Multiple other ETPD officers, including defendants Delahanty and Przemieniecki, and Ubry, stood nearby and observed the arrest in progress. **Victim 1 did not physically resist ETPD officers at any time.**" (Emphasis added)

Yes, he did. The Indictment is false in its claim the alleged victim did not resist arrest at any time. This is an essential fact in assessing the allegation of use of excessive force and deprivation of rights under color of law under 18 U.S.C. § 242.

"Officer A" (identified as such out of an abundance of caution given grand jury confidentiality rules), who is known from the police reports and video produced in discovery to have participated in the handcuffing of Victim 1, filled out a "Use of Force" form. **(Exhibit D-1) (Submitted separately under seal)** The Use of Force form specifically states that he had to use a "control hold". The reason checked off by "officer A" is "resisting".

Moreover, the alleged Victim 1 is visibly seen resisting in the video of his arrest.

"Officer A" testified before the Grand Jury stating the defendant did resist arrest and had to use a compliance hold, wrist lock to control him. T22:14-16 **(Exhibit D2) (Submitted separately under seal)** He stated **it's** "like a grabbing of the wrists", but elaborated "some kind of pressure point tactic, but it was more like a wrist lock…" T22:14-16.

The U.S. Attorney then transmogrified the use of a wrist lock into simply the "grabbing" the defendant's wrist. **(Exhibit D2)** T22:21-24. They are entirely different things. A wrist lock is a specific technique used to control an individual and prevent any movement. In this case, resisting.

The claim in the Indictment alleged Victim 1 "did not resist at any time" is paramount and telling. It goes to the very heart of assessing whether or not to even bring a case to seek an Indictment and prosecute. The use of force on a cooperative and obedient arrestee is very different than the use of force on someone resisting arrest. And it guides us in assessing what else had to have happened before the Grand Jury to lead to such a patently false statement.

Revealing the logic of their prosecution further, in paragraph 5 the Indictment states "While Officers 1,2 and 3 handcuffed Victim 1 remained lying face down, defendant Delahanty,

**unprompted**, stepped on the back of Victim 1's head pressing it into the snow." (Emphasis added)

Again, this is objectively false. The defendant below was resisting at the time Delahanty allegedly touches the side of his head. The behavior of Delahanty was hardly unprompted. The alleged Victim 1 was resisting.

Because this claim that the alleged Victim 1 was not resisting is false, and they claim Delahanty's action was unprompted, we can logically presume, indeed it is manifest, intentionally misleading and deceptive evidence was presented to the Grand Jury to secure an Indictment in an otherwise weak case.

The Court cannot countenance misconduct. The prosecutorial misconduct here is unlawfully misleading this Grand Jury. But we don't know what else was said that led to the claim Victim 1 never resisted "at any time".

There is more, however. The behavior of alleged Victim 1 throughout this case was in fact one prolonged case of resisting arrest. This young man engaged in a series of serious felonies leading to his ultimate arrest. They included car theft, eluding, burglary and ultimately, physically resisting. At no time did he voluntarily obey the officers commands and place his hands behind his back for cuffing.

Any claims by the prosecution that the alleged Victim 1 never resisted while on the ground, let alone the behavior outlined above, is false.

Moreover, at no time does Delahanty step on the back of Victim 1's head. It simply didn't happen. It is a fiction.

### Legal standard

The United States Supreme Court has made clear that a district court may invoke its supervisory power to dismiss an indictment where it can be shown that government misconduct during the grand jury process "substantially influenced the grand jury's decision to indict, or if there is a grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (citation and quotations omitted, emphasis added), *Accord, United States v. Williams*, 504 U.S. 36, 46 (1992) ("the supervisory power can be used to dismiss an indictment because of misconduct before the grand jury"); *United States v. Brito*, 907 F.2d 392, 394 (2d Cir. 1990) (noting the court's power to "dismiss an indictment for prosecutorial misconduct" before the grand jury pursuant to "our supervisory power," and citing the *Bank of Nova Scotia* standard as one basis for doing so).

Courts have invoked their supervisory powers to dismiss indictments under *Bank of Nova Scotia* for a wide range of government misconduct, including improper and/or illegal investigative techniques by law enforcement agents. See, e.g. *United States v. Castro-Gonzalez*, 2014 WL 3490506, at*2-3(S.D. Cal. July 11, 2014) (dismissing indictment with prejudice based on "bad faith and misconduct of case agent," who concealed from grand jury, prosecutor and court that the evidence against defendant in narcotics case was obtained while defendant was working as a confidential informant); *United States v. Sabri*, 973 F. Supp. 134, 148 (W.D.N.Y. 1996) (dismissing count of indictment under "supervisory power" where, at the direction of the FBI, the Government manipulated the attorney-client relationship in order to obtain evidence against the defendant, noting that this law enforcement technique threatens "the integrity of the judicial process"); *United States v. Marshank*, 777 F.Supp. 1507, 1521 1528-29 (N.D. Cal. 1991 (dismissing indictment where government agents and the prosecutor "collaborated with [the

defendant's] attorney to build a case against him," noting that it was invoking its supervisory power, among other reasons, "to preserve judicial integrity, and to deter future government misconduct") numerous courts have also dismissed under *Bank of Nova Scotia* based on government misconduct that occurs in the grand jury room. *See e.g., United States v. Bowling*, 108F Supp 3rd 343, 352 – 53 (E. D. N. C. 2015) (dismissing several counts because the indictment was based on erroneous legal instruction to the grand jury); *United States v. Stevens*, 771F sub 2nd 556, 566 – 68 (D. Md. 2011) (dismissing indictment because prosecutor gave the grand jury erroneous legal instruction); *United States v. Cerullo*, 2007 WL2683799, at*1 – 4 (S. D. Cal. September 7, 2007) (dismissing indictment where prosecutor and government agent repeatedly misled the grand jury); *United States v. Peralta*, 763 F. Supp. 14, 21 (S.D.N.Y. 1991) (dismissing indictment because of misleading statement of law and inaccurate testimony before the grand jury).

Here, unlike in *Bank of Nova Scotia*, the record, even without further development, raises grave doubts as to whether the government misconduct "had a substantial effect on the grand jury's decision to indict." It is clear, even with the very limited record before us, that the questioning by the U.S. Attorney in conjunction with the answers adduced from the witnesses was specifically designed to mislead the Grand Jury and eliminate from question the level of resistance generated by the defendant below, alleged Victim 1.

One shudders to think that if a wrist lock, which is a pain inducing jiu jitsu technique, is transmogrified by the U.S. Attorney into grabbing a wrist, what else was misrepresented to the grand jury in Mr. Delahanty's case.

Moreover, we have no idea if this Grand Jury asked questions about the facts or the law that were then answered misleadingly.

This motion is not a fishing expedition and without basis. Far from it in fact. There is clear evidence that the U.S. Attorney presented this case as one where there was no resistance by the felon who endangered countless lives in Ewing Township that day. Any time resistance came up, it was downplayed by the government and maneuvered toward nonexistence.

Given the clear resistance shown on the video and the claims in the Indictment that there was "no resistance" and that Delahanty stepped on the defendant's head "unprompted"—when the facts are to the contrary—there is clear evidence of misconduct and an effort to mislead by the Government.

The prejudice to Michael Delahanty is great here. Delahanty has lost his pension during the pendency of this matter. A local newspaper has grossly misreported his behavior. Michael had an impeccable career with Ewing over the span of 25 years. Rising to the rank of Lieutenant and becoming an instructor in a variety of law enforcement fields. He risks losing his liberty.

Accordingly, Michael Delahanty moves before this Court asking that his Indictment be dismissed with prejudice. Alternatively, given the discrepancy between the facts of this case, the language of the Indictment and the clear attempts by the prosecution to downplay the resistance, we can't know the scope of the government's efforts to influence the decision of the Grand Jury, a decision that must be theirs and theirs alone, unimpeded by the government, we ask for the production of all grand jury materials including a complete record of the testimony, exhibits introduced, instructions on the law and any colloquy between grand jurors and the U.S. Attorney, and questions asked by the jurors.

## POINT II

**The Government Must Produce All Expert Reports and Summaries of Proposed Expert Testimony**

Fed. R. Crim. P. 16 (a) (1) (E) allows discovery of all scientific and expert reports were test results, as well as a summary of the testimony which the government intends to introduce through any expert witness. The summary must contain the reasons for the basis for the expert opinion, along with the expert's qualifications.

It is essential the defense be provided with any government report as soon as practicable so it may review and investigate the assertions assumptions and conclusions in the report in order to present a defense. Timely production of the Government's expert report and summary would provide Delahanty adequate time to obtain an expert to assist him in defending against and "attacking the Government's expert". *See United States v. Barrett* 73 F2d 1076, 1081 (9th Cir. 1983). Delahanty requests such evidence be made available as soon as possible given the practicalities of dealing with expert witnesses and a trial.

## POINT III

**The Government Must Disclose All Evidence Favorable to Delahanty Including Exculpatory and Impeachment Evidence**

Due process protections require the government to disclose evidence favorable to Delahanty or, alternatively, unfavorable to the prosecution. See generally *Brady v. Maryland*, 373 U.S. 83 (1963). This includes any evidence materially favorable to the accused, including

both direct evidence and impeachment evidence. As held in *Kyles v. Whiteley*, 514 U.S. 419, 434 (1995), Brady evidence extends to evidence with some value as exculpation and impeachment. *Id.* at 450; see also, *United States v. Hill* 976 F.2d 132, 134 – 35 (3d Cir. 1992).

The Government's duty of candor applies to any information affecting a witness's credibility and any information concerning the guilt or innocence of the accused. See *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio v. United States*, 405 U.S. 150, 154 – 155 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 – 70 (1959). The Government has a duty to exercise due diligence in ascertaining whether evidence favorable to the defendant exists. See, *Kyles*, 514 US at 437 – 38. If the exculpatory nature of the evidence is doubtful, it may be produced to the court for in camera Brady inspection. See *United States v. Cadet* 727 F2d 1453, 1467-68 (9th Cir. 1984). Doubts regarding whether the information is Brady material should be resolved in favor of disclosure. *United States v. Aqurs*, 427 U.S. 97, 108 (1976).

In the instant matter, at a minimum, the Brady material should include criminal convictions of any witnesses, including the juvenile, TB, and personnel and internal investigation files on all agents and law enforcement personnel involved in the investigation of this matter.

Production of law enforcement personnel and internal investigation files and information will allow Delahanty to determine if anyone: (a season is under investigation for any professional or criminal liability or complaint; (B) has committed crimes were other bad acts, regardless of whether prosecution ensued; (C) has any information that would impact the ability to testify, including medical or psychiatric conditions were drug or alcohol use; (D) has any basis for bias in testimony; and parentheses the) has been reprimanded by their employer for any actions taken in this case were others. See *United States v. Henthorn*, 930 F.2d 29, 30 (9th Cir. 1990)

(government has obligation, upon defendant's request, to review personnel files of law enforcement witnesses intends to call at trial).

These materials may require time-consuming pretrial investigation. Delahanty is entitled to disclosure in time to make effective use of the material. See, e.g. *United States v. Higgs*, 713 F. 2d 39, 44 n.6 (3d Cir. 1983). Early disclosure rule is avoid unnecessary delay or adjournment of testimony.

## POINT IV

### THE GOVERNMENT MUST PRODUCE ANY FED. R. CRIM. P. 404(B) EVIDENCE IT ANTICIPATES USING AT

The Government may attempt to introduce other crimes evidence in its case in chief pursuant to Fed. R. Evid. 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident…

Fed. R. Evid. 404(b) generally prohibits the admission into evidence of extrinsic acts intended to prove a defendant's propensity for crime or to suggest to the jury unfavorable inferences reflecting on his character". *United States v. Scarfo*, 850 F.2d1015, 1018 (3d Cir.), Cert.denied, 488 U.S. 910 (1988). However, as the rule spells out clearly prior bad acts "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In order to prepare for trial, Delahanty requests that the government specify any rule 404(b) evidence it anticipates introducing at trial and demonstrated a proper basis for its admission. If the government seeks to introduce any such evidence, the defense requests the court conduct a hearing on the admissibility of that evidence as is customary.

### POINT V

**The Government Should Produce All *Jencks Act* Material In A Timely Fashion In Advance of Trial**

Delahanty also seeks all statements by witnesses that may constitute Jencks act material, as well as any witness's notes. The Government is required to retain witness notes and reports. See *Virgin Islands v. Testamark*, 570 F. 2d 1162, 1165 – 66 (3d Cir. 1978). While the government is not compelled to produce a witness's rough notes and reports until after the witness testifies pursuant to 18 U.S.C. § 3500, the trial court can exercise its inherent power to control discovery by ordering the government to disclose before trial all Jencks act material. Early disclosure of Jencks act material will expedite trial by preventing unnecessary delays and interruptions during the course of the trial.

### POINT VI

**The Government Must Disclose Grand Jury Witnesses and Testimony In Advance Of Trial As well As The Charge On The Law And Any Colloquy Between Jurors And The Assistant United States Attorney**

In conjunction with Point I of this submission and incorporated herein, Delahanty seeks disclosure of witnesses who testified in the grand jury proceedings that resulted in the indictment and transcripts of their testimony. This court can order production of this testimony pursuant to Fed R Crim P. 6 (e)(3)(E)(i) and (ii) and general principles of due process.

Delahanty has set forth a basis for dismissal of his Indictment pursuant to subsection (ii). The clear language of paragraph 4 of the Indictment suggests there was no resisting by the alleged victim of the excessive force. Yet the small section of testimony provided by the government suggests otherwise. Moreover, as argued in Point I, even the Grand Jury testimony provided makes clear the government is shading testimony to position themselves to falsely

argue that victim 1 did not resist arrest. A precise understanding of Victim 1's behavior as presented by the government is essential to defending this case.

This information is necessary so that Delahanty can determine whether all those who testified in support of his indictment testified possesses any favorable or useful information and whether to request an adverse inference instruction. Moreover, any testimony given before the grand jury's testimony given under oath. These statements and this testimony may be essential to evaluating whether inconsistent testimony is given at trial. Inconsistent statements are essential to any cross-examination.

## POINT VII

**Delahanty requests leave to file additional motions before trial as may be necessary during the course of ongoing discovery and investigation of this most serious matter and join in any motions by co-defendants**

Michael Delahanty requests leave to file additional motions as may be appropriate and necessary due to ongoing discovery and investigation. He also requests leave to join and incorporate herein any motions filed by co-defendants and adopt any arguments and applicable points of law referenced therein.

## CONCLUSION

In conclusion, we ask that this Indictment be dismissed with prejudice for the reasons set forth herein. We alternatively ask for all grand jury materials and the additional discovery requested in this motion.

Respectfully submitted,

/s/ David P. Schroth
David P. Schroth