UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

v.

MICHAEL DELHANTY,
MATTHEW PRZEMIENIECKI, and
JUSTIN UBRY

HON.  MICHAEL A. SHIPP

Crim. No. 21-872 (MAS)

GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' PRETRIAL MOTIONS

PHILIP R. SELLINGER
UNITED STATES ATTORNEY
Federal Building & U.S. Courthouse
402 East State Street, Room 430
Trenton, NJ 08608
(609) 989-2190

On the Brief:
Martha K. Nye
R. Joseph Gribko
Assistant United States Attorneys

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................ii

PRELIMINARY STATEMENT ....................................................................... 1

STATEMENT OF FACTS ............................................................................... 2

ARGUMENT .................................................................................................. 4

   I.   Przemieniecki and Delahanty's Motions for a Bill of Particulars
Should be Denied. ........................................................................................ 4

   II.   Delahanty's and Ubry's Motions to Dismiss Relevant Counts of the
Indictment Should be Denied. ................................................................... 10

      A.   Delahanty's Motion to Dismiss the Indictment Should Be Denied, as
Should His Request for Grand Jury Materials Subject to Rule 6(e). ................ 10

      B.   Ubry's Motion to Dismiss the Indictment for Failure to State an Offense
Must be Denied. ........................................................................................ 18

   III.   Delahanty's Motion for the Government to Disclose Expert Reports,
Qualifications and Summaries of Expert Testimony Should be Denied as Moot.. 23

   IV.   Delahanty's Motion for the Government to Disclose any Brady Material
Should be Denied as Moot ......................................................................... 24

   V.   Delahanty's Motion for the Government to Disclose 404(b) Evidence Should
be Denied as Moot ..................................................................................... 26

   VI.   Delahanty's Motion for the Government to Disclose Jencks Act Material
Before Trial Should be Denied as Moot ..................................................... 26

   VII.   Delahanty's Motion for Leave to File Additional Motions Should be
Denied.. .................................................................................................... 27

   VIII.   The Defendants Should Be Ordered To Provide Reciprocal Discovery To
The Government.......................................................................................... 27

CONCLUSION............................................................................................. 28

## PRELIMINARY STATEMENT

The United States respectfully submits this memorandum of law in opposition to the various motions filed by each defendant in this case. Delahanty and Przemieniecki filed motions for a bill of particulars, while Delahanty and Ubry filed motions to dismiss the counts of the Indictment in which each is charged. Finally, Delahanty filed an omnibus motion for various other forms of relief. For the reasons set forth below, these motions should be denied in their entirety and without a hearing.

## STATEMENT OF FACTS

On January 5, 2018, at approximately 8:13 a.m., an individual in Ewing Township, New Jersey reported her car stolen from her driveway. Police units arrived in the area, located the vehicle, and attempted to stop it, but the driver of the vehicle did not pull over. An officer engaged in a short pursuit but terminated it due to snowy road conditions and other safety factors. Almost immediately thereafter, the driver crashed into another car, exited the vehicle, and ran away from the crash on foot. The driver of the stolen car was later identified as the victim in this criminal civil rights case ("Victim 1"), a sixteen-year-old male.

Approximately 12 officers arrived in the area where Victim 1 was last seen, and quickly found him hiding inside a detached garage behind a house in Ewing. The key events that followed were captured on body-worn camera footage of officers on scene. Officers forcibly pulled Victim 1 out of a window of the garage, and threw him to the ground, face down. After his removal from the garage, Victim 1 was face down in approximately 6 inches of fresh snow, as three officers placed him into handcuffs. Victim 1 did not resist the officers' efforts to arrest him. As Victim 1 was lying in the snow, defendant Michael Delahanty (a Sergeant) stepped forward and stepped onto Victim 1's head with his boot, forcing it down into the snow. At the same time, defendant Matthew Prezmieniecki (a Detective) then walked forward toward Victim 1 and kicked snow directly into Victim 1's face, twice. Defendant Justin Ubry (an Officer) then moved forward and kicked snow onto Victim 1's face. As the other officers affixed Victim 1's handcuffs, Victim 1 raised his head off the

snow. Prezmieniecki walked back toward Victim 1, again kicked snow onto Victim 1's face, stepped on Victim 1's head with his boot and said, "Keep your head down." Przemieniecki held Victim 1's his face into the snow with his boot. The temperature that morning was below freezing. Thereafter, Victim 1 was charged with a number of crimes and motor vehicle offenses.

Victim 1 was later interviewed by Special Agents of the Federal Bureau of Investigation. He reported that while he was on the ground, police officers "started stomping and kicking me." When asked if those actions hurt, he said, "Yes."

On November 18, 2021, a federal grand jury sitting in the District of New Jersey returned a two-count indictment against the defendants. Count One charges Delahanty and Przemieniecki with depriving Victim 1 of his constitutional rights while acting under color of law, in violation of 18 U.S.C. § 242, a felony offense. Count Two charges Ubry with the misdemeanor offense of depriving Victim 1 of his constitutional rights while acting under color of law, in violation of 18 U.S.C. § 242. On March 31, 2022, Przemieniecki filed a motion for a bill of particulars; Delahanty filed a similar motion on April 7, 2022. Also on April 7, 2022, Delahanty filed an omnibus motion seeking dismissal of Count One of the Indictment, among various other requests for relief. Ubry filed a motion to dismiss Count Two of the Indictment.

<u>ARGUMENT</u>

I.   <u>Przemieniecki and Delahanty's Motions for a Bill of Particulars</u>
     <u>Should be Denied.</u>

Przemieniecki and Delahanty have moved, pursuant to Federal Rule of

Criminal Procedure 7(f), for an order directing the Government to supply a detailed

bill of particulars with respect to the charge in the Indictment. They request that

the Court order a bill requiring the Government to detail the bodily injury to

Victim 1, when the injury was caused, how the injury was inflicted, whether the

injury was caused by someone or something other than defendant's conduct,

whether Victim 1 reported his injuries, and any treatment Victim 1 received for said

injury. Przemieniecki Notice of Motion 1-2; Delahanty Notice of Motion 1-2. They

make this request claiming that it is unclear whether the Government can prove

the injury element of the crime charged. But Rule 7(f) "does not require the United

States Attorney to furnish a three dimensional colored motion picture of the

prosecution's proof prior to trial." <u>United States v. Caruso</u>, 948 F. Supp. 382, 395

(D.N.J. 1996) (citations omitted). Here, the defendants' "requests probe too deeply

into the Government's theory and method of proof" and disclosure of the facts that

they request "is not necessary to inform the defendants . . . of the nature of the

charges against them." <u>United States v. Mannino</u>, 480 F. Supp. 1182, 1185

(S.D.N.Y. 1979). Furthermore, the defendants' requests have been largely answered

by the allegations in the Indictment, as well as the discovery provided thus far.

As such, the defendants' motion should be denied.

Federal Rule of Criminal Procedure 7(c) provides, in relevant part, that an indictment need only set forth a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(f). Under Rule 7(f), a bill of particulars may be granted where "an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." United States v. Rosa, 891 F.2d 1063, 1066-67 (3d Cir. 1989); United States v. Addonizio, 451 F.2d 49, 62-63 (3d Cir. 1971). A bill of particulars is required only when an indictment is too vague to permit the defendant to (a) understand the charges and prepare a defense, (b) avoid unfair surprise, and (c) assert a claim of double jeopardy where appropriate. See, e.g., United States v. Chen, 378 F.3d 151, 163 (2d Cir. 2004). "Only where an indictment fails to perform these functions, and thereby 'significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial[,]' will we find that a bill of particulars should have been issued." United States v. Urban, 404 F.3d 754, 771-72 (3d Cir. 2005) (internal citations omitted). As long as the indictment enables a defendant to understand the accusations against him and the central facts that the United States will present at trial, a bill of particulars is unwarranted. See Rosa, 891 F.2d at 1066-67; United States v. Zolp, 659 F. Supp. 692, 706 (D.N.J. 1987); United States v. Deerfield Specialty Paper, Inc., 501 F. Supp. 796, 809-10 (E.D. Pa. 1980).

"A bill of particulars . . . is not intended to provide the defendant with the fruits of the government's investigation, but is instead intended to give the

defendant the <u>minimum</u> amount of information necessary to permit the defendant to conduct his own defense." <u>United States v. Mariani</u>, 90 F. Supp.2d 574, 591 (M.D. Pa. 2000) (emphasis added) (citing <u>United States v. Smith</u>, 776 F.2d 1104 (3d Cir. 1985)); <u>see</u> <u>also</u> <u>Addonizio</u>, 451 F.2d at 64; <u>United States v. Eufrasio</u>, 935 F.2d 555, 575 (3d Cir. 1991) (citing <u>United States v. Armocida</u>, 515 F.2d 49, 54 (3d Cir. 1975)); <u>United States v. Bellomo</u>, 263 F. Supp. 2d 561, 580 (E.D.N.Y. 2003) (stating that "[a] bill of particulars is not designed to: obtain the government's evidence; restrict the government's evidence prior to trial; assist the defendant's investigation; obtain the precise way in which the government intends to prove its case; interpret its evidence for the defendant; or disclose its legal theory"); <u>United States v. Jabali</u>, 2003 WL 22170595, *3 (E.D.N.Y. Sept. 12, 2003) (stating that requests "for exact dates, places, and times in which events occurred . . . ignore the proper scope and function of a bill of particulars and are to be denied").

A defendant also cannot circumvent the purpose of a bill of particulars by presenting a "set of detailed interrogatories in the guise of a bill of particulars." <u>United States v. Kenny</u>, 462 F.2d 1205, 1212 (3d Cir. 1972); <u>United States v. McDade</u>, 827 F. Supp. 1153, 1187-88 (E.D. Pa. 1993) (internal citations omitted), <u>aff'd</u>, 28 F.3d 283 (3d Cir. 1994); <u>see</u> <u>United States v. Armocida</u>, 515 F.2d 49, 54 (3d Cir. 1975) (defendant's "request for the 'when, where and how' of any overt acts not alleged in the indictment was tantamount to a request for 'wholesale discovery of the Government's evidence,' which is not the purpose of a bill of particulars"); <u>see</u> <u>also</u> <u>United States v. Traitz</u>, 1999 WL 551924, *2 (E.D. Pa. July 15, 1999).

6

Further, the Third Circuit has emphasized that the need for a bill of particulars is obviated in those cases where, as here, the United States supplements a detailed charging document with substantial discovery. Urban, 404 F.3d at 772; see also Torres, 901 F.2d at 234; United States v. Munoz, 736 F. Supp. 502, 504 (S.D.N.Y. 1990) (provision of substantial discovery weighs against ordering bill of particulars); United States v. Laughlin, 768 F. Supp. 957, 967 (N.D.N.Y. 1991) (information contained in a Government brief negated the need for a bill of particulars). Thus, where, as here, "discovery provided by the government fills in the outline of the Indictment, the necessity of the bill of particulars declines." United States v. Caruso, 948 F. Supp. 382, 393 (D.N.J. 1996); United States v. Grasso, 173 F. Supp. 2d 353 (E.D. Pa. 2001) (stating that "the Government has provided extensive discovery, which significantly lessens any need for a bill of particulars"); United States v. Beech-Nut Nutrition Corp., 659 F. Supp. 1487, 1499-1500 (E.D.N.Y. 1987) (Government's production of 30,000 pages in discovery "must have answered a great many, if not all, of defendants' requests" for bills of particulars).

Here, the defendants fail to demonstrate that a bill of particulars is necessary and the motions should be denied. The Indictment is a straightforward, five-page, 12-paragraph charging document that adequately states the charged offenses and all relevant information underlying them. The conduct of each defendant is described in full both in the factual paragraphs one through nine, and the language of the crime charged itself. A simple recitation of the charge leads to the conclusions

that Count One is a "plain, concise, and definite written statement of the essential

facts constituting the offense charged":

> On January 5, 2018, in Mercer County, in the District of New Jersey and elsewhere, the defendants, Michael Delahanty and Matthew Przemieniecki, while acting under color of law, unlawfully stepped onto the head of Victim 1, and kicked snow into the face of Victim 1 during the arrest of Victim 1, thereby willfully depriving Victim 1 of the right, secured and protected by the Constitution and laws of the United States, to be free from the use of unreasonable force by a law enforcement officer. The offense resulted in bodily injury to Victim 1.

In addition to the information in the Indictment, discovery in this case has

been extensive and the defendants have had at their disposal all of the documentary

and video evidence that will be used by the Government to prove its case. In

deciding whether a bill should issue, the Court must consider the scope of

information available in discovery, as well as the information set forth in the

Indictment.  *See* Urban, 404 F.3d at 772 ("access to discovery further weakens the

cases for a bill of particulars"); Eisenberg, 773 F. Supp. at 689-90. The test for a bill

of particulars is not whether the material sought would be useful to the defense, but

whether the particulars are necessary to the defense. The discovery in this case was

turned over in two productions and contains dozens of pages of Ewing Township

police reports, FBI investigative reports, and relevant use of force training

materials. Additionally, the Government has provided over forty motor vehicle and

body camera recordings. Frankly, the Government has produced well beyond what

is required under Rule 16 and has fulfilled its discovery obligations with complete

transparency. Where, as here, the Indictment is sufficiently detailed and the

Government has provided the defendants with more than ample discovery,  the defendants' request for a detailed bill of particulars should be denied.

The defendants specifically argue that they require the Government to provide a detailed explanation of the exact injury because "whether the Government can prove [the injury] element of the offense is crucial to the determination if [defendant] can be convicted of a misdemeanor . . . or a felony." Przemieniecki Br. at 4. The Government is aware of its burden of proof at trial and the elements of the crimes charged and will face those tests at the appropriate time. But in no way  is the Government required to preview its entire case for the defense at this junction. Requests for evidentiary detail via a bill or particulars of the kind made by the defendants have been routinely denied. See, e.g., United States v. Armocida, 515 F.2d 49, 54 (3d Cir. 1975); Addonizio, 451 F.2d at 63-64; Parlavecchio, 903 F. Supp. at 795 ("'[i]n recognition of the Government's interest in not being forced to divulge the entirety of its case prior to trial,' a court need not grant a request where it would serve merely to provide the defendant with a detailed pre-trial disclosure of the Government's evidence.") (citation omitted); United States v. Lipari, No. 92-164, 1992 WL 165799, at *14 (D.N.J. July 8, 1992) (Wolin, J.) (The Government is not obligated to reveal the precise means by which the crimes were carried out or its legal theory in general of the defendant's guilt.)

The specific evidence by which the Government intends to prove how the defendants violated Victim 1's constitutional rights, and what Victim 1's bodily injury was, are matters for the Government's evidence at trial and are not required

to be disclosed in a bill of particulars. See United States v. Rankin, 870 F.2d 109, 112 (3d Cir. 1989). The Indictment adequately sets forth the conduct with which the defendants have been charged, thus enabling them to prepare their defense at trial. Moreover, the Government has supplemented that information with extensive discovery, including videos of the incident and statements of Victim 1. The Government has done all that the law requires and more. The defendants' motions therefore should be denied.

II.   Delahanty's and Ubry's Motions to Dismiss Relevant Counts of the Indictment Should be Denied.

A.   Delahanty's Motion to Dismiss the Indictment Should Be Denied, as Should His Request for Grand Jury Materials Subject to Rule 6(e).

Delahanty moves to dismiss Count One of the Indictment based on a factual challenge to the evidence against him, and a frivolous claim of Government misconduct. Delahanty Br. at 4-9. Alternatively, Delahanty requests "immediate production of all grand jury materials." Id. None of Delahanty's arguments comes close to approaching valid bases to dismiss a charge in an indictment properly returned by the Grand Jury. Delahanty's apparent disagreement with the evidence should be reserved for a petit jury's consideration. Accordingly, the motion should be denied. Similarly, Delahanty's disagreement with the evidence falls well short of a particularized need to break grand jury secrecy prescribed by the Federal Rules of Criminal Procedure.

As outlined above, on November 18, 2021, a federal grand jury sitting in the District of New Jersey properly returned an indictment charging Delahanty with

willfully depriving Victim 1 of his constitutional rights while acting under color of law, in violation of 18 U.S.C. § 242, a felony offense. Count Two charges Ubry with the misdemeanor offense of willfully depriving Victim 1 of his constitutional rights while acting under color of law, in violation of 18 U.S.C. § 242. The only difference between the two counts is that the felony offense requires the Government to prove that the victim suffered bodily injury, while the misdemeanor count does not. The language of each charge of the Indictment appropriately tracks the language of the respective provisions of the statute.

Pursuant to Federal Rule of Criminal Procedure 7(c)(1), an indictment must contain only a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is sufficient so long as it: (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution. Moreover, no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution. See United States v. Kemp, 500 F.3d 257, 280 (3d Cir. 2007) (rejecting multiple challenges to the sufficiency of an indictment charging honest services fraud) (internal citations omitted); accord Hamling v. United States, 418 U.S. 87, 117 (1974) (similar

11

standard under constitutional requirements); United States v. Rankin, 870 F.2d 109, 112 (3d Cir. 1989).

While Federal Rule of Criminal Procedure 12(b)(3)(B) permits a defendant to move to dismiss an indictment for a number of reasons, challenging the sufficiency of the Government's evidence of the crime before trial is not one of them. The indictment is considered sufficient when the facts contained in the indictment appropriately state a charge. The Third Circuit has recognized that "'[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits.'" United States v. Vitillo, 490 F.3d 314, 320 (3d Cir. 2007) (quoting Costello v. United States, 350 U.S. 359, 363 (1956) (footnote omitted)). For purposes of Rule 12(b)(3)(B), a district court must "accept[] as true the factual allegations set forth in the indictment." United States v. Besmajian, 910 F.2d 1153, 1154 (3d Cir. 1990). Indeed, the "sufficiency of the indictment should be decided based on the facts alleged within the four corners of the indictment, not the evidence outside of it." Vitillo, 490 F.3d at 321. Thus, a motion to dismiss under Rule 12(b)(3)(B) is not an appropriate vehicle to challenge the sufficiency of the Government's evidence, but only to challenge the legal sufficiency of the Government's allegations. See United States v. DeLaurentis, 230 F.3d 659, 660-61 (3d Cir. 2000); see also Fed. R. Crim. P. 12(b)(2) (limiting pretrial motions to those "that the court can determine without a trial of the general issue"). Instead, "[t]he government is entitled to marshal and present its evidence at trial, and have its

sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29." DeLaurentis, 230 F.3d at 661.

Delahanty's entire motion to dismiss relies upon his disagreement with the facts alleged in the indictment. Defendant's motion relies heavily on Bank of Nova Scotia v. United States, 487 U.S. 250 (1988), and the mistaken premise that "a district court may invoke its supervisory power to dismiss an indictment where is can be shown that government misconduct during the grant jury process 'substantially influenced the grand jury's decision to indict.'" Def. Br. at 7. Defendant cites, but never discusses, United States v. Williams, 504 U.S. 36 (1992), which the Supreme Court decided less than four years after Bank of Nova Scotia. In Williams, the Supreme Court made clear that its holding in Bank of Nova Scotia was limited in scope, and stands only for the principle that if the defendant *first* establishes that an error has occurred before the grand jury, and that such error is one of the miniscule number of errors that the Supreme Court or Congress permits district courts to regulate, even then, an indictment may only be dismissed if the defendant also shows actual prejudice. See 504 U.S. at 46 & n.6. The Williams Court further held that unless the "abuse" claimed by the defendant "amounts to a violation of one of those few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions," a court has no power at all to dismiss a facially valid indictment. Id. (citation and punctuation omitted). As a result, after Williams, a district court's ability to dismiss an indictment based on alleged "abuse" of the grand jury process, is limited to the

rare situation in which the defendant can show that: (1) there has been a violation of one of the "few, clear rules" referred to in Williams, which the Court identified as including those set forth in Rule 6 of the Federal Rules of Criminal Procedure and in certain specified sections of Title 18 of the United States Code; and (2) the defendant suffered actual prejudice as a result. See United States v. Perez, 2007 WL 2189397, *3 n.1 (3d Cir. July 31, 2007) (not precedential). Delahanty cannot satisfy either of these requirements as to the misconduct he alleges, because he cannot show error or misconduct at all, let alone a violation of one of the "few, clear rules" referred to by the Supreme Court or one that caused any cognizable prejudice to him.

The sole contention that Delahanty claims as abuse in the grand jury is his factual disagreement with the Indictment, which alleges that Victim 1 did not resist during his arrest. Delahanty contends that Victim 1 did resist arrest, Delahanty's action was prompted by such resistance, and that Delahanty did not step on the back of Victim 1's head. Def. Br. at 4-6. To be clear, the Government emphatically disagrees with Delahanty's subjective characterization and submits that the facts described in the Indictment are consistent with the evidence presented to the grand jury.[1]

While Delahanty is free to disagree with the grand jury's assessment of the evidence and vigorously challenge the evidence at trial, he is simply wrong that his

---

[1] To the extent the Court wishes to review it, the Government is supplying the Court a copy of the relevant body-worn camera footage capturing the events underlying the Indictment.

14

own subjective opinions as to the facts reflect in any way Government misconduct, or that those opinions warrant either dismissal of the Indictment or an inquiry into the grand jury's consideration of it. In <u>Bank of Nova Scotia</u> itself, the Supreme Court "reaffirmed [the] principle" that "'the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment,' and that 'a challenge to the reliability or competence of the evidence presented to the grand jury' will not be heard." <u>Williams</u>, 504 U.S. at 54 (quoting <u>Bank of Novia Scotia</u>, 487 U.S. at 261). The Supreme Court underscored this once more in <u>Williams</u>, observing that "[a] complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was 'incomplete' or 'misleading.'" <u>Id.</u> at 54-55. Courts in this district have held similarly. <u>See</u> <u>United States v. Eisenberg</u>, 773 F. Supp. 662, 709 (D.N.J. 1991) (where defendant argued prosecutorial misconduct based upon a perceived mischaracterization of the evidence, the Court denied his motion to dismiss because he had failed to cast "grave doubt" on the independence of the grand jury and also denied his request for grand jury materials for failure to show a "substantial likelihood" of prejudice.); <u>United States v. Price</u>, No. CIV. A. 08-145, 2008 WL 2996232, at *4 (E.D. Pa. Aug. 5, 2008), <u>aff'd sub nom.</u> <u>Price v. Warden, FCI Fairton</u>, 610 F. App'x 89 (3d Cir. 2015) (not precedential) (defendant's challenge to Indictment based upon his reading of portions of the grand jury testimony did not rise to the level of deliberate misrepresentation to show prosecutorial misconduct).

Delahanty's argument that this Court should dismiss the Indictment in this case due to his different view of the evidence "would run counter to the whole history of the grand jury institution, and neither justice nor the concept of a fair trial requires it." Id. at 55 (citation and punctuation omitted). His motion thus should be denied.

Alternatively, Delahanty requests access to transcripts, exhibits, and instructions of law presented to the grand jury in this case, claiming that he has shown that grounds may exist to dismiss the Indictment because of alleged abuse of the grand jury process. As set forth above, Delahanty has not identified any error or misconduct that, even if it occurred, would allow the Court to dismiss the Indictment under Williams. Again, he simply disagrees with the evidence; that is not misconduct. For the reasons set forth above, his motion for the production of grand jury transcripts should be denied outright.

But even if Delahanty had alleged some error in the grand jury process that could, if proven, justify dismissal of the Indictment, naked allegations of the kind in his motion do not entitle him to grand jury materials. The secrecy of grand jury proceedings is protected by Rule 6(e) of the Federal Rules of Criminal Procedure, and while Rule 6(e)(3)(E) permits a court to authorize disclosure of grand jury matters, it may do so only upon a showing of a "particularized need" that outweighs the public interest in grand jury secrecy. In demonstrating a particularized need, "mere speculation that improprieties may have occurred will not suffice." United States v. Budzanoski, 462 F.2d 443, 454 (3d Cir. 1972). Instead, discovery regarding

16

grand jury proceedings is appropriate only "upon a showing of [a] substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury." Id.

Delahanty fails to even mention the showing of "substantial likelihood of gross or prejudicial irregularities" that he must make—perhaps because he cannot do so. His entire request rests upon the speculation that "the government is shading testimony to position themselves to falsely argue that [V]ictim 1 did not resist arrest." Def. Br. at 13-14. Delahanty appears to claim that based upon the limited Grand Jury testimony the Government provided in discovery[2], there was evidence that Victim 1 resisted and that one officer felt the need to generate a Use of Force Report. However, despite having this information, the Grand Jury still voted to indict. Delahanty makes the leap from this testimony and single report to claim baldly that the Government must have "shaded testimony" to support its position that Victim 1 did not resist. This argument is difficult to understand, because it was the Government that clearly elicited the exact information on which Delahanty relies on in his motion. His claim on its face represents precisely the kind of "mere speculation" that Budzanoski forbids. Moreover, such a claim fails to establish "a substantial likelihood" that "gross or prejudicial irregularities" occurred before the Grand Jury.

None of Delahanty's arguments is even close to enough to overcome the strong presumption of maintaining grand jury secrecy. He has shown no likelihood

---

[2] In fulfillment of its *Brady* obligations, the Government provided all portions of the Grand Jury testimony that arguably could be considered favorable to the accused.

of any "gross or prejudicial irregularity," and no "particularized need" for the grand jury transcripts he seeks. And because <u>Bank of Nova Scotia</u> and <u>Williams</u> preclude this Court from dismissing the Indictment based on the presentation of evidence that is allegedly inaccurate or "misleading," Delahanty's claim that grand jury transcripts should be produced because he believes that the "government is shading testimony to position themselves to falsely argue" fares no better. He has not met the standard set forth in <u>Budzanoski</u> as to any of the error he claims, and his motion therefore should be denied.

      B.   Ubry's Motion to Dismiss the Indictment for Failure to State an Offense Must be Denied.

Ubry claims that Count Two of the Indictment should be dismissed as kicking snow into another's face is not prohibited in the Constitution and therefore Count Two fails to allege an essential element of the crime and state an offense. Ubry Notice of Motion 1-2. But Count Two tracks the language of the statute, and it pleads facts that, if proven at trial, would violate that statute. Accordingly, the defendant's motion should be denied.

The Government already has set out the legal standards as explored above in Section II.A: "'An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, <u>if valid on its face</u>, is enough to call for trial of the charge on the merits.'" <u>United States v. Vitillo</u>, 490 F.3d 314, 320 (3d Cir. 2007) (emphasis added) (quoting <u>Costello v. United States</u>, 350 U.S. 359, 363 (1956) (footnote omitted)). Indeed, only in rare circumstances will an indictment fail adequately to state an offense. For instance, dismissal is appropriate only "if the

18

specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation," United States v. Panarella, 277 F.3d 678, 685 (3d Cir. 2002), such as where a statute penalizes assaults on a rape victim but the indictment alleges assault only on a male companion of the rape victim, Gov't of the Virgin Islands v. Greenidge, 600 F.2d 437, 438-40 (3d Cir. 1979). This is not one of the rare circumstances where the facts alleged in the Indictment, if proven beyond a reasonable doubt at trial, fail to establish a violation of the charged statute.

The Indictment alleges that on or about January 5, 2018, in Mercer County, in the District of New Jersey, and elsewhere, the defendant, Justin Ubry, while acting under color of law, unlawfully kicked snow into the face of Victim 1 during the arrest of Victim 1, thereby willfully depriving Victim 1 of the right, secured and protected by the Constitution and laws of the United States, to be free from the use of unreasonable force by a law enforcement officer, in violation of Title 18, United States Code, Section 242. The text of Count Two plainly satisfies Rule 7(c)(1)'s requirement of a "plain, concise and definite written statement of the essential facts constituting the offense charged," and it alleges facts that, if proven, establish a violation of Section 242. Ubry's motion does not challenge the statutory language used in Count Two but claims, curiously, that because "no law protects one from having snow kicked in his or her face," it is not a protected right and therefore "cannot be the basis of a Section 242 criminal prosecution." Ubry Br. at 5-6. Ubry is wrong as a matter of law, and misunderstands the elements of the crime charged.

Further, Ubry contends there must be more than *de minimis* injury to sustain a claim. <u>Id.</u> Again he is incorrect. Ubry was charged only with the misdemeanor offense of Section 242, which requires no injury at all.

The elements of a violation of Section 242 are that the defendant: (1) was acting under color of law, (2) deprived Victim 1 of his right to be free from unreasonable search and seizure, and (3) acted willfully in depriving Victim 1 of this right. <u>United States v. Lanier</u>, 520 U.S. 259, 264 (1997) ("Section 242 is a Reconstruction Era civil rights statute making it criminal to act (1) 'willfully' and (2) under color of law (3) to deprive a person of rights protected by the Constitution or laws of the United States."); <u>United States v. Johnston</u>, 107 F.3d 200, 210 (3d Cir. 1997) (generally discussing statutory elements).  The specific right at issue here is the victim's right to be free from the use of unreasonable force by one acting under color of law. This is a right protected under the Fourth Amendment. <u>Graham v. Connor</u>, 490 U.S. 386, 394, 396-97 (1989) (holding that Fourth Amendment governs an arrestee's excessive force claims); <u>Curley v. Klem</u>, 499 F.3d 199, 206-07 (3d Cir. 2007) ("In an excessive force case, whether there is a constitutional violation is properly analyzed under the Fourth Amendment's 'objective reasonableness' standard.")

These cases, including the ones that Ubry cites, make clear that the right protected by the Constitution is the Fourth Amendment's prohibition against unreasonable search a seizure, through which any claim of unreasonable force is considered. Here, the Indictment identifies the violation of Victim 1's Fourth

Amendment rights with specificity – "willfully depriving Victim 1 of the right, secured and protected by the Constitution and laws of the United States, to be free from the use of unreasonable force by a law enforcement officer." Accordingly, Count Two of the Indictment has clearly and adequately alleged, on its face, the essential facts constituting the offense charged.

An individual's right to be free from excessive force during search and seizure, as guaranteed by the Fourth Amendment of the Constitution, is clearly established. It is also well settled that in evaluating a violation of this established right, the focus for the finder of fact is on the reasonableness of force under the particular circumstances presented, rather than the degree of injury. The Supreme Court has long made clear in excessive force cases that "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . but its proper application requires careful attention to the facts and circumstances of each particular case . . . ." Graham, 490 U.S. at 396 (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)). Court have explored this principle in excessive force claims asserted in both the criminal charges filed under 18 U.S.C. § 242, as well as in civil claims filed under 42 U.S.C. § 1983; a review of both contexts is instructive and consistent. While the degree of injury may be relevant to the determination of the reasonableness of that force, the existence (or non-existence) of injury is not determinative of whether Fourth Amendment protections have been violated. Chambers v. Pennycook, 641 F.3d 898, 906 (8th Cir. 2011). Multiple courts have upheld the principle that "an excessive force claim [under the Fourth

Amendment] does not require any particular degree of injury."[3] Chelios v. Heavener, 520 F.3d 678, 690 (7th Cir. 2008); see, e.g., Saunders v. Duke, 766 F.3d 1262, 1270 (11th Cir. 2014) (holding that an excessive-force claim does not require proof of "some arbitrary quantity of injury") (citation omitted); Chambers, 641 F.3d at 906 (rejecting a contention that "evidence of only *de minimis* injury necessarily forecloses a claim of excessive force"); Morrison v. Board of Trs. of Green Twp., 583 F.3d 394, 406-407 (6th Cir. 2009) (rejecting "a blanket *de minimis* injury requirement for excessive force claims"). Indeed, a violation of one's Fourth Amendment protections can occur even where the amount of force is simply gratuitous or when no injury occurs. See Webb v. Saginaw Police Dep't, No. 12-12370, 2013 WL 6768609, at *9 (E.D. Mich. Dec. 19, 2013) (concluding that a reasonable jury could find an officer used excessive force when he rubbed subject's face in the dirt while subject was already in handcuffs, despite the lack of resulting injury); Holmes v. City of Massillon, 78 F.3d 1041, 1048 (6th Cir. 1996) (upholding excessive force claim where plaintiff alleged that officers used excessive force in removing her wedding ring, which caused her pain); cf. Velius v. Twp. of Hamilton, 466 F. App'x 133, 137 (3d Cir. 2012) (not precedential) (confirming a jury could find

---

[3] However, in the special circumstance of claims based solely on the force applied while placing handcuffs on an arrestee's wrists, some courts have found that more than *de minimus* injury is required as the process involves some use of force, and "it almost inevitably will result in some irritation, minor injury, or discomfort." Chambers, 641 F.3d at 907; Cortez v. McCauley, 478 F.3d 1108, 1128-1129 (10th Cir. 2007). That, of course, is not this case; the alleged violations here concern force applied during the process of handcuffing Victim 1, but do not concern the act of handcuffing itself.

officer's forcing subject out of his vehicle and handcuffing tightly to be excessive force, as there need not be injury to be actionable under the Fourth Amendment).

This line of cases also make particular sense here, since the misdemeanor violation of § 242, with which Ubry is charged, requires no injury at all.  These legal principles also are consistent with the Indictment's allegation that Ubry and the other defendants *willfully* deprived Victim 1 of his right to be free from unreasonable force under the circumstances.

Whether Ubry's alleged use of force was unreasonable under the circumstances is a matter for the jury. But the fact that Ubry's conduct did not cause Victim 1 injury—although relevant to a jury's determination of excessiveness or reasonableness—does not mean as a matter of law that he did not violate Victim 1's Fourth Amendment rights.  As noted, injury is not an element of the misdemeanor offense of 18 U.S.C. § 242. At this juncture, Count Two properly alleges a violation of § 242. For the foregoing reasons, Ubry's motion to dismiss Count Two of the Indictment for failure to state an offense should be denied.

III. <u>Delahanty's Motion for the Government to Disclose Expert Reports, Qualifications and Summaries of Expert Testimony Should be Denied as Moot</u>

Delahanty requests that the Government disclose any experts it intends to call at trial and a summary of that expert's intended testimony. Delahanty Br. at 10.  The Government is aware of its obligations to provide such notice under Federal Rule of Criminal Procedure 16(a)(1)(E). At this time, the Government does not anticipate calling any experts during the trial. However, the Government notes

that a trial date has not yet been set in this matter, and should the Government's position on expert witnesses change, counsel will be given adequate notice and all appropriate materials. Accordingly, there is nothing to disclose at this time, and this motion should be denied as moot.

IV.    Delahanty's Motion for the Government to Disclose any Brady Material Should be Denied as Moot

Delahanty has moved for an order directing the Government to disclose any materials that contain exculpatory or potentially exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny (including Giglio v. United States, 405 U.S. 150, 154 (1972)). Delahanty Br. at 10-12. That request should be denied as moot. As an initial matter, the order that Delahanty requests already has been entered pursuant to Fed. R. Crim. P. 5(f). See Dkt. 11, 14, 18. Moreover, the Government is aware of its Brady/Giglio obligations and will promptly disclose to the defendant any evidence favorable to the defendant, if and when any such evidence comes into the Government's possession. It should be noted that to date, the Government has provided a number of materials – police reports, victim statements and portions of grand jury testimony – that potentially fall within the requirements of Brady. Further, as the Government noted in its initial discovery letter to the defendant dated December 2, 2021, the Government will disclose impeachment information under Giglio, if any, at the time it provides prior statements of witnesses pursuant to the Jencks Act, 18 U.S.C. § 3500.

In addition, relying on United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), Delahanty also has moved for an order directing the Government to review

24

the personnel files of law enforcement officers who participated in this case and who will testify at pretrial hearings or trial. Delahanty Br. at 11. While the Ninth Circuit has required a review of personnel files of law enforcement witnesses, see Henthorn, 931 F.2d 29, that court just one year later reversed a district court that required the prosecutor to personally conduct such a review, stating that it was sufficient to comply with Department of Justice policy that allowed the agency to conduct the first review. See United States v. Jennings, 960 F.2d 1488, 1491-92 (9th Cir. 1992). Additionally, other circuits have rejected the Henthorn rule. *See* United States v. Driscoll, 970 F.2d 1472, 1482 (6th Cir. 1992); see also United States v. Quinn, 123 F.3d 1415, 1421-22 (11th Cir. 1997); United States v. Escobar, 842 F. Supp. 1519, 1530 (E.D.N.Y. 1994) (prosecutor not obliged to know what is in the files of other agencies); United States v. McElhiney, 275 F.3d 928, 933 (10th Cir. 2001). Moreover, even in the Ninth Circuit, Henthorn does not apply to the personnel files of state law enforcement witnesses, such as the Ewing Township police officers and detectives involved in the investigation here. See United States v. Dominguez-Villa, 954 F.2d 562 (9th Cir. 1992). The Government has requested or will request that the relevant agency conduct a review of the personnel files of witnesses that the Government intends to call at trial, and will turn over to the defendant, or submit to the Court *in camera* to determine whether to turn over to the defense, any materials that arguably go to the credibility or bias of the witness. Of course, the mere production to the defendant of such discovery does not in any manner waive any Government objection as to its admissibility at trial.

V.    Delahanty's Motion for the Government to Disclose 404(b) Evidence
      Should be Denied as Moot

The United States is aware of its obligations under Rule 404(b) of the Federal Rules of Evidence to provide the defendant with reasonable notice in advance of trial of the general nature of any evidence of other crimes, wrongs or acts that it intends to introduce at trial and will do so in a manner that will not delay the trial. The trial in this matter has not yet been scheduled. Nevertheless, the Government agrees to provide any such material to the defendant no later than ten days before jury selection commences.

VI.   Delahanty's Motion for the Government to Disclose Jencks Act Material
      Before Trial Should be Denied as Moot

The Government is aware of its disclosure obligations under the Jencks Act, 18 U.S.C. § 3500, and will comply with those obligations in a timely manner. To that end, the Government will provide this material to all the defendants no later than five (5) days before any hearing or the trial of this matter, which more than satisfies the Jencks Act and ensures the defendant's due process rights to a fair and just trial. United States v. Higgs, 713 F.2d 39, 44 (3d Cir. 1983), cert. denied, 464 U.S. 1048 (1984); United States v. Kubiak, 704 F.2d 1545, 1549-50 (11th Cir.), cert. denied, 464 U.S. 852 (1983); United States v. Kopituk, 690 F.2d 1289, 1337-41 n.47 (11th Cir. 1982), cert. denied, 463 U.S. 1209 (1983). Accordingly, Delahanty's motion for early Jencks should be denied as moot.

VII.   <u>Delahanty's Motion for Leave to File Additional Motions Should be Denied.</u>

Delahanty seeks to reserve the right to file additional motions in the future. To the extent this need arises from any further disclosure of discovery materials by the Government, pursuant to the Government's continuing discovery obligation, the Government does not oppose any such request. However, Delahanty should not be permitted to enlarge the time for filing of motions that could have been brought based on discovery materials already produced. Accordingly, the Government reserves the right to oppose on timeliness grounds any motions the defendant may file in the future.

VIII.   <u>The Defendants Should Be Ordered To Provide Reciprocal Discovery To The Government.</u>

By letter dated December 2, 2021, the Government sought reciprocal discovery from all the defendants. Rule 16(b)(1) establishes the right of the Government to reciprocal discovery from a defendant. Subsection (b)(1)(A) allows the Government, upon compliance with a legitimate request by a defendant for similar material, to do the following:

> inspect and copy or photograph books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody, or control of the defendant and which the defendant intends to introduce as evidence in chief at trial.

Subsections (b)(1)(B) and (b)(1)(C) mandate reciprocal discovery of scientific tests and expert testimony, respectively. Under the clear language of Rule 16(b)(1), courts uniformly have directed reciprocal discovery. <u>See</u>, <u>e.g.</u>, <u>United States v. Bump</u>, 605 F.2d 548, 551-52 (10th Cir. 1979) (requiring reciprocal disclosure over

the defendant's objection that it would violate his constitutional rights); <u>United States v. Sherman</u>, 426 F. Supp. 85, 93 (S.D.N.Y. 1976).

To date, the Government has not received reciprocal discovery from any defendant. Because discovery has been made available to the defendants, the Government is entitled, pre-trial, to reciprocal discovery under Rule 16(b)(1). Therefore, should there be any discovery forthcoming from the defendants, the Court should direct disclosure of such discoverable information.

<u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that the defendants' pretrial motions be denied without a hearing, and that the defendants be ordered to provide reciprocal discovery.

Respectfully submitted,

PHILIP R. SELLINGER
UNITED STATES ATTORNEY

*s/ Martha K. Nye*

By:   _____

Martha K. Nye
R. Joseph Gribko
Assistant U.S. Attorney

Dated:    May 3, 2022
          Trenton, NJ